See also, 120 F.Supp. 830.

**In the Matter of STALCO TV & APPLIANCE COMPANY, A Partnership, and Sam Vitemb and Mike Vitemb, as Partners and Individuals, Bankrupts.**

No. 2309.

United States District Court,
S. D. Texas, Houston Division.

Feb. 28, 1955.

Seymour Lieberman and William H. Scott, Sr., Houston, Tex., for bankrupt Sam Vitemb.

Thad Grundy, Houston, Tex., for the trustee.

·Hutcheson, Taliaferro & Hutcheson, Houston, Tex. (Alister B. Mahon and Thad T. Hutcheson) and Fred Much, Houston, Tex., for certain creditors.

KENNERLY, District Judge.

On February 13, 1953, an involuntary Petition in Bankruptcy was filed in this court by creditors against Mike Vitemb and Sam Vitemb, individually and as partners in and composing the firm or partnership of Stalco TV & Appliance Company. Each partner individually and the partnership was later adjudicated a bankrupt, a trustee named and their estates have been and are being administered in this court. Objections to their discharge under the Bankruptcy Act and Section 14 thereof, Section 32, 11 U.S. C.A., were filed by the Trustee and certain creditors and upon a hearing the Referee denied each of them a discharge. Thereupon Mike Vitemb and Sam Vitemb, individually and as members of such partnership, each filed his Petition to Review such action of the Referee. Mike Vitemb later dismissed his Petition to Review, and this is a hearing on the Petition to Review of Sam Vitemb alone on certificate of and the record sent up by the Referee, and on briefs and oral argument. Sam Vitemb is for brevity called Bankrupt.

■■ 1. Various reasons why such discharge should not be granted to Bankrupt (Sam Vitemb) were assigned by the Trustee and creditors, but the Referee has narrowed them down and based his action and made findings on only four.[1]

These are:

(a) That the partnership of Stalco TV & Appliance Company of which Bankrupt (Sam Vitemb) was a member failed to keep or preserve books of account or records showing their financial condition, etc.

(b) That the Bankrupt (Sam Vitemb) as an individual failed to keep or pre-serve books of account or records showing his financial condition, etc.

(c) That the partnership of Stalco TV & Appliance Company of which Bankrupt (Sam Vitemb) was a member has failed to explain satisfactorily losses of assets, etc.

(d) That Bankrupt (Sam Vitemb) left an asset of $350 out of his Schedules required to be filed by the Act.

Bankrupt (Sam Vitemb) petition for discharge and the objections thereto by the Trustee and creditors were heard fully and at length by the Referee. The transcript which he sends up as part of the Record consists of more than 500 typewritten pages. There is therein the testimony stenographically reported of a number of witnesses who testified before the Referee. These include auditors, etc. employed by the Trustee and creditors, who examined and analyzed all the books and records produced by the Bankrupts. The transcript also includes the testimony of both the Bankrupt (Sam Vitemb) and his partner (Mike Vitemb) who is also his father. Also the witnesses produced by them. Also there was much documentary evidence. The Referee heard these witnesses testify orally and was able to and did judge their credibility, reconcile any conflicts in their testimony, and upon the whole Record make his findings of fact. There is not ony evidence to support the Referee's Findings of Fact, but an examination of the Record convinces me that his Findings of Fact are correct. Findings of Fact of a Referee must be accepted as correct unless clearly erroneous. Phillips v. Baker, 5 Cir., 165 F.2d 578. ,

2. In his brief filed with the Referee, the Bankrupt (Sam Vitemb) claiming that he has surrendered all of his property to the Bankruptcy Court[2] and citing Texas National Bank of Beaumont v. Edson, 5 Cir., 100 F.2d 789 and other cases, pressed upon the Referee that he

1. The Referee's full Findings of Fact are later quoted in full herein.

2. There is no finding by the Referee that the Bankrupt (Sam Vitemb) has surrendered all of his property to the Bankruptcy Court and I am doubtful if this Record would support such a finding if made.

must exercise his discretion in this matter and grant his discharge. He says:

"On the onset of this discussion, and before we answer the specifications, we call to this Court's attention that Sam Vitemb has surrendered *all of his property* to this Bankruptcy Court. Consequently, the Bankrupt Sam Vitemb, has complied with the essential purpose of the Bankruptcy Act, and that all of the specifications charged against him merely go into questions of technicalities, and these technicalities, we will attempt to show this Court, are insufficient to set aside the broad purpose of the Bankruptcy Act as promulgated in the case above set out."

In passing upon the issue thus tendered the Referee in his First Conclusion of Law says:

"I conclude that based upon the foregoing facts neither of the bankrupts is entitled to a discharge from their debts."

If the matter of Bankrupt's (Sam Vitemb) discharge was in the discretion of the Referee on the whole case, I concur in the Referee's conclusion that the Bankrupt (Sam Vitemb) is not entitled thereto. However, the discretion respecting discharges of bankrupts to be exercised by a Court of Bankruptcy apparently arises in those cases where there is a failure to keep books, etc. International Shoe Co. v. Leivine, 5 Cir., 68 F.2d 517; Burchett v. Myers, 9 Cir., 202 F.2d 920; Nix v. Sternberg, 8 Cir., 38 F.2d 611; Dilworth v. Boothe, 5 Cir., 69 F.2d 621; In re Greenberg, D.C., 46 F.Supp. 289; In re Pinkston, D.C., 93 F.Supp. 942.

In Texas National Bank of Beaumont v. Edson, supra, upon which Bankrupt (Sam Vitemb) relies, it is said [100 F.2d 791]: (Italics mine.)

"This case comes within the provision of Section 14 of the Bankruptcy Act, 11 U.S.C.A. § 32, which provides that the court shall grant the discharge unless satisfied that the bankrupt has 'failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case.' That the books and records were not kept, clearly appears from the fact that, for the period covered by the statements, certain basic information was missing, and that no record whatever was kept for a period of almost four years. The grant of the discharge, therefore, is dependent upon the finding of the court that the failure to keep books was justified 'under all the circumstances of the case.' *In the determination of this question, it is evident that Congress intended that the district court should exercise a wide discretion. If the facts do not disclose a positive duty to keep the books and records, or, disclosing such a duty, there appears to be sufficient ground to warrant a finding of extenuating circumstances, an order of discharge should not be disturbed on appeal. Conversely, a denial of discharge should not be disturbed unless arbitrary or clearly unjust. Within this range of sound judicial discretion, the district court must interpret the facts and apply the rules of reasonable conduct in the light of business as well as judicial experience, to the end that the purposes of the Bankruptcy Act may be subserved.*"

Under the rule thus stated I think the Referee correctly exercised his discretion and denied Bankrupt (Sam Vitemb) his discharge both with respect to his partnership and individual creditors.

3. The statute, Section 32, 11 U.S.C.A., respecting the discharge of bankrupts provides that:

"The court shall grant the discharge unless satisfied that the bankrupt has * * * (2) destroyed, mutilated, falsified, con-

cealed, or failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case".

The Referee found that the partnership and its individual members had failed to keep such books of account and record, etc., and that the Bankrupt (Sam Vitemb) is responsible for such failure. He says:

"I find that the keeping or preservation of the books or records was within the scope or authority of Sam Vitemb as a partner of same firm and that the failure to keep or preserve books of accounts or records was not justified under the circumstances of the case."

The Record fully supports and compels this finding, that Bankrupt (Sam Vitemb) is responsible for the manner in which the partnership books, etc., were kept. I think no other finding could properly have been made.

The Referee further finds:

"I find that the bankrupts, partnership and individually, failed to keep books or records from which their financial condition and business transactions might be ascertained.

"I find that they failed to keep books or records from which their financial condition and business transactions might be ascertained without reconstructing the books of the bankrupts.

"I find that the books of the bankrupts could not be reconstructed without obtaining information from other sources that was not in the books and records of the bankrupts."

The Bankrupt (Sam Vitemb) in his "Objections and Brief" filed January 31, 1955, says:

"The Referee should have found from the evidence that books and records of the partnership and Sam Vitemb individually were kept and they could be reconstructed by obtaining information from the Bankrupts themselves."

The evidence, I think, shows beyond a doubt that the books and records that came into the possession of the Trustee were wholly inadequate to show the financial condition of the partnership. I think that it is also shown that neither of the partners (Sam Vitemb or Mike Vitemb) had or have sufficient information with respect to the partnership business to enable them, or either of them, to furnish information to the Trustee which would enable the Trustee or his accountants to reconstruct the books and accounts as suggested by Bankrupt (Sam Vitemb). Certainly, if they have such information they, though given every opportunity to do so, have never given it to the Trustee. There is reason to believe that they ceased to keep their main and most important books on September 30, 1952, in order to remain ignorant of their business affairs in an effort to hinder, delay and perhaps defraud their creditors. Their explanation of their conduct in this respect is not convincing.

■ The Bankrupt (Sam Vitemb) also points to some claimed statement of the Trustee's auditor and insists that the Referee should have put aside and ignored the whole testimony of this auditor and of all the other witnesses and based his findings wholly on such statements. It was the duty of the Referee to hear all the evidence, pass on the credibility of the witnesses, weigh the evidence and make his findings. He has done so and I think his findings are correct.

In addition to the Referee's general conclusions already quoted that Bankrupt (Sam Vitemb) is not entitled to his discharge, the Referee concludes:

"I conclude that books and records cannot be supplemented by information not in writing to comply with the requirement that books and records be kept. Information known to bankrupts and employees,

494

not of record, is not contemplated by books and records to be kept."

Citing Dillworth v. Boothe, 5 Cir., 69 F.2d 621; Texas National Bank of Beaumont v. Edson, 5 Cir., 100 F.2d 789, and other similar cases, Bankrupt (Sam Vitemb) strongly presses upon me Burchett v. Myers, supra. The rule with respect to the failure of a bankrupt to keep books, etc., is well stated in that case. I quote [202 F.2d 926]:

"We do not say that appellant was required to keep impeccable books of account covering his personal finances. But where a bankrupt's transactions are of the scope and complexity of those of appellant, there should be either books or records, orderly kept, which, together with the recollections and explanations of the bankrupt, will form the basis for a reasonably accurate and complete accounting of his business affairs. Cf. Rosenberg v. Bloom, 9 Cir., 99 F.2d 249; Benjamin v. Jasan, 2 Cir., 144 F.2d 58.

"Here neither the bankrupt nor his accountant could untangle or supplement the morass of disjointed and incomplete records and memoranda which the bankrupt brought into court. It has been held that where a competent accountant cannot determine a bankrupt's financial condition, a discharge should be denied. In re Miller, D.C.Md., 5 F. Supp. 913; In re Arnold, D.C.D.N. H., 1 F.Supp. 499. If the books of the two corporations which appellant managed were essential to a complete accounting of his finances, it was incumbent upon the bankrupt to produce such books or copies thereof. White v. Schoenfeld, 2 Cir., 117 F.2d 131; In re Sandow, D.C.S.D.N.Y., 59 F.Supp. 782, affirmed 2 Cir., 151 F.2d 807."

Here the books of the partnership were far from being impeccable. They had not been kept in an orderly manner. Neither the Trustee nor his skilled accountant, either with or without the recollection or explanations of the part-

ners were able to make up a reasonably accurate statement of the partnership business affairs.

I think the Referee's findings and conclusions with respect to the discharge of the Bankrupt (Sam Vitemb) and the partnership are right and should be affirmed.

4. The above-quoted findings of the Referee are with respect to the partnership books. The Referee also found that the Bankrupt (Sam Vitemb) was individually engaged in business as the owner and operator of a tourist court and otherwise, and failed to keep proper books of account and records. His findings of fact are as follows:

"I find that Sam Vitemb was individually engaged in the business of owning and operating a tourist court, known as Midway Courts, and had a gross income of approximately $3,600.00 per month, and approximately $800.00 net per month from September 30, 1952, to date of bankruptcy.

"I find that Sam Vitemb failed to keep or preserve books of account or records from September 30, 1952, from which his financial condition and business transactions could be reasonably ascertained.

"I find that Sam Vitemb failed to keep individual books or records from which his financial condition and business transactions could be reasonably ascertained.

"I find that the failure to keep such books or records was not justified under the circumstances of the case."

There seems to be no serious dispute that these findings are correct. Certainly no other findings can be properly made from the evidence.

The question of whether the individual records, etc., of Bankrupt (Sam Vitemb) could be reconstructed from information from other sources apparently is not presented as it is in the case of the partnership. If it is Bankrupt (Sam Vitemb) is no better off than he is in the case of

the partnership. The Referee in the exercise of his discretion, Texas National Bank of Beaumont v. Edson, supra, has found and concluded that Bankrupt's (Sam Vitemb) discharge as an individual should be denied. The Record fully supports such findings and conclusions.

5. The statute, Section 32, 11 U.S. C.A., respecting the discharge of bankrupts also provides that:

"The court shall grant the discharge unless satisfied that the bankrupt * * * (7) has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities".

The Referee has found that the partnership and its individual members had failed to explain satisfactorily certain losses and deficiencies of assets. His findings are as follows:

"I find that the bankrupts, according to their profit and loss statement as of September 30, 1952, had an inventory of $141,442.06, a total net worth of $289,725.07.

"I find that the bankrupts filed schedules of May 13, 1953, showing inventory of only $7,500.00.

"I find that the trustee filed his inventory showing merchandise of $31,000.00.

"I find that the bankrupts purchased replacement merchandise as sales were made (T.E., Vol. 5, page 110) to replenish their stock and they failed to satisfactorily explain the apparent loss in their inventory.

"I find that the Stalco Television Company, according to its balance sheet of September 30, 1952, had a total net worth of $289,725.07.

"I find that the schedules filed by bankrupts listed assets of $186,491.-07, and liabilities of $1,016,501.94 and they failed to explain satisfactorily the loss of assets from September 30, 1952, to date of filing schedules on May 13, 1953."

The documents to which the Referee refers were before him. They show on their face the figures set forth in his findings. The findings that such figures indicate and show losses or deficiencies of assets is well supported thereby and by the evidence, and Bankrupt (Sam Vitemb) points to nothing in the Record to the contrary. When the entire Record is considered such findings are found to be well supported.

The Record also fully supports the Referee's findings and conclusion that the Bankrupt (Sam Vitemb) has failed to explain satisfactorily such loss or deficiency. No such explanation is to be found in the testimony of Bankrupt (Sam Vitemb) nor in that of his father and partner, Mike Vitemb, nor in that of any witness produced by him. No adequate partnership books were kept after September 30, 1952, and Bankrupt may not point to his books for an explanation. The expert accountants employed by the Trustee received no explanation from Bankrupt.

The Record shows that such findings showing large loss or deficiency of assets from September 30, 1952, to May 13, 1953, are abundantly supported by the evidence.

Bankrupt (Sam Vitemb) points to the case of In re Horwitz, 7 Cir., 92 F.2d 632. In that case the Referee who heard Horwitz' petition for discharge found in his favor on both the law and the facts and reported in favor of granting the discharge. The district judge, upon review, overruled the Referee and denied the discharge. Here the Referee after a very full hearing has found the facts against Bankrupt and denied the discharge. His findings are supported by the facts and are unassailable.

In that case Horwitz kept a full set of books which were produced before the Referee, here the partnership kept no adequate books after September 30, 1952. In that case there was no direct evidence and no finding was made by the Referee

that Horwitz concealed assets, etc. Here there is no direct finding by the Referee that Bankrupt (Sam Vitemb) concealed assets, but I would be unwilling to say that the Record contains no evidence pointing in that direction. In that case Horwitz made a satisfactory explanation of the loss or deficiency of assets. Here Bankrupt (Sam Vitemb) makes none.

I think the Referee on this point reached the right conclusion both on the law and the facts.

6. The Referee also finds that Bankrupt (Sam Vitemb) left out of his schedule an asset of $350.00. His fact findings are as follows:

"I find that in September 1952, Sam Vitemb made an oral agreement with Cletus Brown, an automobile dealer in Rosenburg, Texas, pursuant to which he delivered to Brown a deep freeze unit and received from Brown a credit of $350.-00, which was to be used by Sam Vitemb as a credit on the purchase price of a new automobile.

"I find that said credit was acknowledged by said Brown and could be exercised by the trustee or by his assigns.

"I find that Sam Vitemb knew of such credit and failed to place it in his schedules."

It will be observed that the Referee does not find that the Bankrupt (Sam Vitemb) wilfully left this item out of his schedules. I think the evidence shows that its omission was probably an oversight, and standing alone not sufficient upon which to base a denial of Bankrupt's (Sam Vitemb) discharge.

From what has been said it follows that the Referee's order denying Bankrupt (Sam Vitemb) his discharge should be affirmed.